UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JANE DOE,<br>        Plaintiff,<br><br>      v.<br><br>TOWN OF STOUGHTON, BRETT<br>DICKENS, and ANTHONY SARNO<br>        Defendants. | Civil Action No. 12-10467-PBS |

November 25, 2013

Saris, U.S.D.J.

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

Plaintiff Jane Doe, a former student in the Stoughton Public Schools, brings this action alleging that the Defendants, the Town of Stoughton (the "Town"), Brett Dickens, the principal, and Anthony Sarno, the Superintendent of Schools, failed to prevent other students from sexually harassing her in school. Defendants have moved for summary judgment on all remaining counts.[1] Counts 1, 2, and 3 allege that, pursuant to 42 U.S.C. § 1983, Defendants deprived Plaintiff of her constitutional right to equal protection in violation of the Fourteenth Amendment; Count 6

---

[1] This Court previously granted Defendants' motion to dismiss Counts 4 and 5, which alleged violations of Title IX by Dickens and Sarno. The Court denied Defendants' motion to dismiss Count 8. Mem. and Order on Defs.' Mot. to Dismiss (Jan. 22, 2013) (Docket No. 17).

1

alleges that the Town violated her statutory rights pursuant to Title IX, 20 U.S.C. § 1681; Count 7 alleges that the Town violated the Massachusetts Fair Educational Practices Act, Mass. Gen. Laws ch. 151C, §2(g), pursuant to Mass. Gen. Laws ch. 214, §1C; and Count 8 alleges that the Town is liable for the negligent acts and omissions of various public employees who failed to take action to protect Doe from reported instances of sexual harassment. After a review of the record and hearing, Defendants' Motion for Summary Judgment (Docket No. 27) is **DENIED** with respect to Counts 6 and 8. The Court takes the remaining counts, as well as issues of qualified immunity, under advisement. This case is set for trial in January 2014.

## II. DISCUSSION

This Court previously summarized the basic factual contours of this case in its Memorandum and Order on Defendants' Motion to Dismiss (Docket No. 17). In this discussion, the Court will view disputed issues of fact in the light most favorable to the plaintiff, drawing all reasonable inferences in her favor. Sands v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). The Court's review is governed by familiar standards, examining the record to determine whether there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**A.  Title IX Claim**

>Section 901(a) of Title IX provides:
>
>No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). A school district is liable for student-on-student harassment where (1) the harassment is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit"; (2) the defendant had actual knowledge of the harassment; and (3) the funding recipient acted with deliberate indifference to the harassment. Davis v. Monroe County Bd. Of Educ., 526 U.S. 629, 633 (1999); see also Porto v. Town of Tewksbury, 488 F.3d 67, 72-73 (1st Cir. 2007).

Whether conduct amounts to a hostile environment characterized by severe, persistent, and objectively offensive gender-based harassment depends on a variety of factors, including the ages of the harasser(s) and victim(s), number of individuals involved, and the type, frequency, and duration of the conduct. Davis, 526 U.S. at 651. This is a highly factual and context-specific determination, begging consideration of a full "constellation of surrounding circumstances, expectations, and relationships." Id.

The Town disputes whether the behavior complained of by Plaintiff occurred "on the basis of sex," and if so, whether the conduct rises to the level of severity to trigger Title IX liability. A reasonable jury could find that the complained-of actions occurred on the basis of sex. Multiple students circulated one or more nude photographs of Plaintiff to other classmates. Acts of name-calling on school grounds included gender-charged words such as "slut" and "whore." Plaintiff and her classmate report multiple incidents where classmates spoke to Plaintiff about the pictures in a sexually demeaning manner. Pointing, whispering, and staring by fellow students can be considered "sexual" in this context. Based on evidence that the alleged conduct involved a high number of students and continued over the course of multiple months, a reasonable jury could conclude that Plaintiff experienced a hostile environment at the school. According to Plaintiff and a classmate, the harassment occurred as often as every day, and students repeatedly showed and discussed the photographs. One guidance counselor estimates that between twenty-five and thirty students were spoken to about their behavior (though the counselor herself only personally spoke to four).

If a jury finds that the peer harassment clears the "severe, persistent, and objectively offensive" bar, it could also conclude that the conduct deprived Plaintiff of an education at

4

Stoughton High School. According to Plaintiff, the harassment triggered a full-blown eating disorder. On multiple occasions between November 2007 and March 2008, Plaintiff attempted suicide. She enrolled in an intensive outpatient program to treat her eating disorder, necessitating a Section 504 plan to allow her to keep up with her classes. In March 2008, Plaintiff withdrew from school entirely following a week-long hospitalization. A reasonable jury could conclude that the ongoing conduct of Plaintiff's peers instigated or, at the very least, contributed to severe physical and mental health issues, causing her to withdraw from school. Plaintiff's inability to partake in the traditional school environment could fairly be characterized as a deprivation of educational opportunities and benefits. Cf. Davis, 526 U.S. at 652 (elementary school student's drop in grades "provides necessary evidence of a potential link between her education and [harasser's] misconduct").

The Town does not dispute that the district had actual knowledge of the alleged harassment experienced by Doe. Officer Hardy informed Principal Dickens and Assistant Principal Jacobs about the photos as early as November 30, 2007, three days after RJ admitted that he first disseminated the photos. Plaintiff's parents continually spoke to representatives of the Town about the harassment. Plaintiff repeatedly spoke to school officials about the harassment, including counselors, administrators, and

school police officer Hardy. At least one teacher observed harassment occur and submitted a written report to school administration.

The final step in the Davis test presents a high bar for liability, even when a student has experienced deplorable and objectively hideous harassment. Title IX does not require administrators to "purg[e] their schools of actionable peer harassment." Id. at 648. Deliberate indifference is not a question of "effectiveness by hindsight." Porto, 488 F.3d at 74. "The fact that measures designed to stop harassment prove later to be ineffective does not establish that the steps taken were clearly unreasonably in light of the circumstances known by [the district] at the time." Id.

In its review of the summary judgment record, the Court is mindful that it "should refrain from second-guessing the disciplinary decisions made by school administrators." Davis, 526 U.S. at 648. Nevertheless, the Court concludes that the disputed issues of fact, taken in the light most favorable to Plaintiff, necessitate denial of Defendants' motion for summary judgment on this Title IX count. It is undisputed that no formal disciplinary actions were taken against any students, even RJ, save a stern "talking to" here or there. No parents were ever called about harassment of Doe, although school administrators regularly called parents to report misconduct in other circumstances. In

6

his written statement, RJ provided Assistant Principal Jacobs with the names of four other students who likely had the photographs; Jacobs only spoke to two of those students. While two guidance counselors spoke to multiple students between November 2007 and March 2008, these conversations amounted to a review of the school's harassment policy and a warning that future conduct could result in discipline. Plaintiff contends that the harassment continued even after these admonitions, yet school administrators did not heighten their response.

Certain statements made by administrators could lead a jury to infer that school actors either intentionally or unintentionally minimized the severity of the issue. Other statements made to Plaintiff and her mother could allow a jury to conclude that school administrators grew impatient or even exasperated with the constant reports of harassment. Taken together, the Court concludes that a jury question remains as to whether the school's response was deliberately indifferent to Plaintiff. Accordingly, Defendants' Motion for Summary Judgment is **DENIED** with respect to Count 6.

**B. Negligence Claim**

Count 8 alleges that Stoughton is liable for negligence, due to its public employees' failure to respond to Doe's allegations

of sexual harassment by RJ and other students.[2] Plaintiff's mother states in her deposition that she was given specific assurances by school officer Hardy that the offensive behavior would be addressed. Plaintiff alleges that she relied on this representation when she continued to attend Stoughton High School during the 2007-2008 school year, causing her to continue enduring the trauma of peer harassment. A genuine issue of material fact exists as to whether this promise of assistance was "explicit and specific" such that Mass. Gen. Laws ch. 258, § 10(j)(1) applies. Lawrence v. City of Cambridge, 664 N.E.2d 1, 3 (1996). Defendants' Motion for Summary Judgment is **DENIED** with respect to Count 8.

### III. ORDER

Defendants' Motion for Summary Judgment (Docket No. 27) is **DENIED** with respect to Counts 6 (Title IX) and Count 8 (Negligence).

---

[2] The Court previously denied Defendants' motion to dismiss this negligence count, concluding that the alleged conduct by the Town of Stoughton's public employees falls into the following exemption from municipal immunity:

> [A]ny claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances.

Mass. Gen. Laws ch. 258, § 10(j)(1).

```
                            /s/ PATTI B. SARIS
                            PATTI B. SARIS
                            United States District Judge
```