UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ))))))))))) | |

JANE DOE,
               Plaintiff,

         v.                        Civil Action No. 12-10467-PBS

TOWN OF STOUGHTON, BRETT
DICKENS, and ANTHONY SARNO
              Defendants.

December 10, 2013

Saris, U.S.D.J.

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

Plaintiff Jane Doe, a former student in the Stoughton Public Schools, brings this action under Title IX, 20 U.S.C. §1681, the Equal Protection Clause and state law, alleging that the Defendants, the Town of Stoughton, Brett Dickens, the principal, and Anthony Sarno, the Superintendent of Schools, failed to prevent other students from sexually harassing her in school. Defendants moved for summary judgment.[1] The Court denied the motion for summary judgment with respect to Count 6 (Title IX) and Count 8 (Negligence), and took the remaining counts under

---

[1] This Court previously granted Defendants' motion to dismiss counts 4 and 5, which alleged violations of Title IX by Dickens and Sarno. The Court denied Defendants' motion to dismiss count 8. Doe v. Town of Stoughton, 917 F. Supp. 2d 160 (D. Mass. 2013). The Court assumes familiarity with that opinion, which sets forth the key allegations in the case.

advisement. Partial Mem. and Order on Defs.' Mot. for Summ. J.
(Nov. 25, 2013) (Docket No. 54). Counts 1, 2, and 3 allege that,
pursuant to 42 U.S.C. § 1983, Defendants deprived Plaintiff of
her constitutional right to equal protection in violation of the
Fourteenth Amendment; Count 7 alleges that the Town violated the
Massachusetts Fair Educational Practices Act, Mass. Gen. Laws ch.
151C, §2(g), pursuant to Mass. Gen. Laws ch. 214, §1C.

After a review of the record and hearing, Defendants' Motion
for Summary Judgment (Docket No. 27) is **ALLOWED** with respect to
Counts 1, 2, and 3, and Count 7.

## II. FACTUAL BACKGROUND

This Court previously summarized the basic factual contours
of this case in its Memorandum and Order on Defendants' Motion to
Dismiss. Doe v. Town of Stoughton, 917 F. Supp. 2d 160 (D. Mass.
2013). In this Memorandum, the Court will only summarize facts
pertinent to Plaintiff's Equal Protection Clause and
Massachusetts Fair Educational Practices Act claims. The Court
views disputed issues of fact in the light most favorable to the
plaintiff, drawing all reasonable inferences in her favor. Sands
v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir. 2001) (citing
Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Plaintiff was a 14-year-old freshman at Stoughton High
School during the 2007-2008 school year. In October 2007, RJ, a
17-year-old junior at the School, asked Plaintiff to send him

nude photos of herself. Plaintiff sent five or six photos to RJ via email. On October 19, RJ raped Plaintiff in a park, off school property.[2] Plaintiff told a friend about the sexual assault on November 21, about a month later. Plaintiff alleges that the friend told others, and that word eventually got around to RJ that Plaintiff had discussed the assault with a fellow student. On November 27, RJ disseminated the pictures of Plaintiff to two female classmates. Shortly after, those students showed and sent the photos to other students, who in turn sent the photos to others. That day, a group of students asked Doe about the pictures, and pointed and laughed at her. That night, she attempted to kill herself by overdosing on medication belonging to her parents.

Plaintiff's mother learned about the circulation of the pictures from Plaintiff's uncle. She called the police, and let the school know about the incident. A guidance counselor told Plaintiff's mother not to get the police involved, and assured her that "we'll just take care of it here [at school]." Plaintiff's mother spoke to a school officer, who informed administrators about the photos. The principal of Stoughton High School, Defendant Dickens, recused herself from further involvement in the situation because she is related to RJ.

---

[2] In September 2008, RJ pled guilty to indecent assault and battery in relation to this incident.

Principal Dickens told the school assistant principal to handle the matter. The assistant principal met with RJ, told him to delete the photographs of Doe, and had RJ submit a written statement detailing his actions. The assistant principal and school officer met with two students who received the photos from RJ and told them to cease distribution of the photos.

Over the course of the following months, students at the school harassed Plaintiff about the pictures almost daily. Students pointed at her, whispered, laughed, cornered her and made inappropriate comments, used sexually suggestive insults, and continued circulating the photographs to one another. Plaintiff repeatedly reported this behavior to two school guidance counselors. The counselors then would meet with the offending student or students, review the school's anti-harassment policy, and warn them that in the future such behavior would result in discipline. Still, the harassment continued into the spring semester. In mid-February 2008, Plaintiff stopped reporting the harassment to the guidance counselors, reasoning that they were ineffective at addressing her classmates' behavior. Throughout this period, Principal Dickens remained uninvolved, though she received updates from school staff.

The harassment escalated until Plaintiff, suffering from an eating disorder, attempted to drown herself in the bathtub. Plaintiff reported suicidal thoughts to her doctor in March 2008

and began a two-week inpatient hospitalization. In the following months, Plaintiff's mother met with school administrators, including Principal Dickens, to discuss her daughter's absence from school and arrange for supplemental tutoring. Plaintiff's mother learned of Principal Dickens's relationship to RJ in May 2008 and asked that Dickens not participate in Plaintiff's academic arrangements. Plaintiff never returned to Stoughton High School as a student. Instead, she received tutoring to finish out her freshman year.

Defendant Sarno began preliminary work as a consultant for Stoughton Public Schools in mid-December 2007, and assumed the position of interim superintendent in January 2008. He served as superintendent until June 2009. Though aware of the ongoing Doe matter, Sarno was not directly involved until he met with Plaintiff's mother in June 2008 and denied her request to pay Plaintiff's private school tuition for the following school year.

### III. DISCUSSION

The Court's review is governed by familiar standards, examining the record to determine whether there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A.  Equal Protection Clause Claims

Doe alleges that the Town, Dickens, and Sarno violated the Equal Protection Clause by inadequately responding to her

classmates' harassment, thereby creating "a lower-quality learning environment than that of her male peers."[3] Defendants assert that there is no evidence that plaintiff was treated less favorably than any similarly situated male student. The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction equal protection of the laws." U.S. Const. Amend. XIV, § 1. This provision of the Fourteenth Amendment "contemplates that similarly situated persons are to receive substantially similar treatment from their government." Tapalian v. Tusino, 377 F.2d 1, 5 (1st Cir. 2004). Section 1983 suits based on the Equal Protection Clause are "available to plaintiffs alleging unconstitutional gender discrimination in schools." Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 258 (2009). An alleged victim of peer-to-peer harassment must show that she was afforded a lower level of protection than other students as a result of her membership in a protected class.

---

[3] Typically, a plaintiff asserting an Equal Protection Clause violation "must identify his [or her] putative comparators" to make out a threshold case of disparate treatment. E.g., Harron v. Town of Franklin, 660 F.3d 531, 537 (1st Cir. 2011). Plaintiff's proffered comparator is a male student from Stoughton High School who suffered from harassment over social media and complained to the school about peer harassment. Plaintiff asserts that Defendants treated this student more favorably because school officials "contacted the parents of the students responsible for [the comparator's] harassment, a measure never taken with [Plaintiff's] harassers." Pl.'s Opp'n Def.'s Mot. Summ. J. at 16. For the reasons described herein, the Court will not reach the question of whether this proffered comparator establishes disparate treatment of Plaintiff.

*1. Count 1: Municipal Defendant*

To succeed in her claim against the Town, Doe must show that the harassment was the result of municipal custom, policy, or practice. Monell v. Dept. of Soc. Servs. Of the City of N.Y., 436 U.S. 658, 691 (1978). Doe can establish the existence of an official policy by showing that the alleged injury was caused "by a person with final policymaking authority." Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008). Municipal liability under 42 U.S.C. § 1983 only attaches where the individual actor has final authority to establish policy with respect to the subject matter in question. Walden v. City of Providence, R.I., 596 F.3d 38, 56-57 (1st Cir. 2010). "The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembauer v. City of Cincinnati, 475 U.S. 469, 481-82 (1986). However, if a district's authorized policymakers "approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Whether a municipal official qualifies as a policymaker for § 1983 purposes is a matter of state law. Walden, 596 F.3d at 56 (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

The Town asserts that in Massachusetts, a School Committee acts as the body with final policymaking authority, and that not even a district superintendent counts as a policymaker under state law. Mass. Gen. Laws. ch. 71, § 37 ("The school committee in each city and town . . . *shall establish* educational goals and *policies* for the schools in the district . . . ."); Mass. Gen. Laws. ch. 71, § 59 ("A superintendent . . . shall manage the system in a fashion consistent with . . . the *policy determinations of that school committee* . . . .") (emphasis added). As one Massachusetts Superior Court judge summarized these statutes in the context of a school-based civil rights action, "In short, the school committee makes policy; the school superintendent and principals implement those policies." McLaughlin v. City of Lowell, 8 Mass. L. Rptr. 343, at *13-14 (Mass. Super. Ct. Apr. 3, 1998) (Gants, J.) (granting summary judgment to municipality on § 1983 action alleging misconduct by school principal and district superintendent, but not by school committee members); cf. McDuffy v. Sec. of Exec. Office of Educ., 615 N.E.2d 516, 549 (Mass. 1993) (in another context, observing that the "[g]eneral charge" of the public schools in each city is assigned to a locally elected school committee.)

Federal district courts have split on whether a superintendent counts as a policymaker under Massachusetts state law. Compare Doe v. Bradshaw 2013 WL 5236110, at *7 (D. Mass.

Sept. 16, 2013) (denying motion to dismiss § 1983 action against municipality where the school committee received report of coach's sexual misconduct with student and directed superintendent to investigate on its behalf), and Armstrong v. Lamy, 938 F. Supp. 1018, 1035-37 (D. Mass. 1996) (granting summary judgment to municipality on § 1983 claim because plaintiffs presented no evidence that school committee members knew of teacher's alleged sexual contact with student and failed to take appropriate action), with Bowler v. Town of Hudson, 514 F. Supp. 2d 168, 184 (D. Mass. 2007) (denying summary judgment to municipality on § 1983 free speech claim, where plaintiffs presented evidence that superintendent "had knowledge of the unconstitutional censorship and ratified it on arguably unconstitutional grounds"), and Lewis v. City of Boston, 2002 WL 523910, at *10 (D. Mass. 2002) (plaintiff could bring § 1983 claim against municipality where "the decision [to eliminate plaintiff's music director position] was made by the City's education policymakers - the superintendent, the deputy superintendent, and the head of the curriculum department").

Here, the assistant principal and school guidance counselors addressed the ongoing peer harassment alleged by Plaintiff, and not Stoughton school committee members. Regardless of whether a superintendent can act as a final policymaker under state law, it is clear that an assistant principal or guidance counselor is not one. Further, the record evidences no pattern or practice giving

rise to liability under § 1983. Therefore, Plaintiff has not satisfied the <u>Monell</u> standard for municipal liability for constitutional violations.

   *2. Counts 2 and 3: Individual Defendants*

   As for claims against school officials, the alleged victim of peer-on-peer harassment must demonstrate that the officials treated her differently from others similarly situated, either intentionally or with deliberate indifference. <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 38 (1st Cir. 2013). Plaintiff has not shown that either defendant sued in his or her individual capacity had any involvement in the disciplinary decisions which allegedly caused her constitutional injury.

   "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." <u>Rogan v. Menino</u>, 175 F.3d 75, 77 (1st Cir. 1999). Plaintiff has produced no evidence that Superintendent Sarnos personally engaged in the matter until June 2008, after Plaintiff had withdrawn from Stoughton High School. Further, Sarnos officially assumed his position in January 2008, well after many of the crucial events in this action took place.[4] Principal Dickens recused herself from addressing disciplinary issues that arose in connection to these events, since she is

---

   [4] While Sarnos did begin preliminary work for the district in mid-December 2007 on a consultancy basis, the summary judgment record does not indicate that he participated in any decision-making about Doe's treatment by her peers.

related to the boy who initially circulated the photographs of
Doe. Principal Dickens stated that she was "updated" about
matters regarding the harassment of Doe, but did not directly
deal with any situations herself. Though she participated in
discussions of academic accommodations following Doe's
hospitalization in March 2008, Dickens's actions taken with
respect to Plaintiff's tutoring are unconnected to the actions of
others that Plaintiff alleges violated the Equal Protection
Clause. To the extent Plaintiff asserts that Dickens is a
mandated reporter who failed to report RJ's felonious actions,
see Mass. Gen. Laws ch. 119, § 51A, Plaintiff does not allege
that in other circumstances similarly situated students were
treated differently than her.

Accordingly, Defendants' Motion for Summary Judgment is
**ALLOWED** with respect to Counts 1, 2, and 3.

## B. Massachusetts Fair Educational Practices Claim

Under the Massachusetts Fair Educational Practices Act, it
is an unfair educational practice for an educational institution
to "sexually harass students in any program or course of study in
any educational institution." Mass. Gen. Laws ch. 151C, § 2(g).
Section 3(a) of chapter 151C appears to limit the class of
persons who can seek relief to persons "seeking admission as a
student to any educational institution, or enrolled as a student
in a vocational training institution." Mass. Gen. Laws ch. 151C,

§ 3(a); see Doe v. Fournier, 851 F. Supp. 2d 207, 215 (D. Mass. 2012). Accordingly, Plaintiff brings her complaint under Mass. Gen. Laws ch. 214, § 1C. Chapter 214, section 1C provides: "A person shall have the right to be free from sexual harassment, as defined in" chapters 151B, prohibiting employment discrimination, and 151C. Mass. Gen. Laws ch. 214, § 1C. This provision was enacted to expand the class of persons who could seek relief for violations of chapters 151B and 151C. Lowery v. Klemm, 845 N.E.2d 1124, 1129 (Mass. 2006)(declining to expand chapter 151B coverage to non-employee volunteers through chapter 214, where volunteers would not have a statutory cause of action under chapter 151B). Chapter 214 thereby allows academic students who fall outside the two narrow categories described in chapter 151C, section 3(a) to nevertheless take advantages of the protections offered by the Fair Educational Practices Act. See Morrison v. Northern Essex Comm. Coll., 780 N.E.2d 132, 135 (Mass. App. Ct. 2002).

At first blush, the sweeping language of chapter 214 would seem to cover peer-to-peer harassment, since it provides for "the right *to be free from* sexual harassment" in the educational context. Mass. Gen. Laws ch. 214, § 1C (emphasis added). The Massachusetts Supreme Judicial Court directs the Court to "construe G.L. c. 214, § 1C, to incorporate the complete definitions of 'sexual harassment' found in . . . G.L. c. 151C, § 1(e)." Lowery, 845 N.E.2d at 1128. This definition describes one form of sexual harassment as conduct that has "the purpose or

effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment." Mass. Gen. Laws ch. 151C, § 1(e)(ii). The conduct of Plaintiff's peers could fairly be described in this manner.

Nevertheless, mindful of Lowery's directive that chapter 214 should not create a cause of action where one does not exist under chapter 151C, the Court turns to the language describing the alleged unfair educational practice: "It shall be an unfair educational practice for an *educational institution* . . . (g) [t]o sexually harass students in any program or course of study in any educational institution." Mass. Gen. Laws ch. 151C, § 2(g) (emphasis added). The plain language of the statute contemplates a scenario in which the institution itself, through its administrators or employees, acts as the harasser. See Fournier, 851 F. Supp. 2d at 213 (describing guidance counselor's constant text messages to teenage student over a two-week period, culminating in alleged sexual relations with plaintiff at counselor's apartment); Morrison, 780 N.E.2d at 140-43 (describing how sexually suggestive behavior of coach could constitute a hostile education environment in violation of chapter 151C, section 2(g)). While Massachusetts courts have not recently addressed application of chapter 151C to peer-on-peer harassment cases, this interpretation accords with the approach of the Massachusetts Commission Against Discrimination (MCAD),

13

the state agency charged with enforcement of the statute.
Buschini v. Newburyport Public Schools, 18 Mass. Disc. L. Rep.
216, 217 (1996) (rejecting a claim against a town under chapter
151C of sexual harassment of one first grader by another).
Federal courts interpreting state law "generally defer to a state
agency's interpretation" of a statute the agency is charged with
enforcing. E.g., City of Bangor v. Citizens Commc'ns Co., 532
F.3d 70, 94 (1st Cir. 2008). Since Plaintiff's allegations center
only on the conduct of peers, Buschini indicates that MCAD would
not recognize her 151C claim. In the absence of statutory
language supporting a chapter 151C cause of action for peer-on-
peer student harassment, and in the absence of any Massachusetts
case law or MCAD rulings supporting such a claim, the Court
declines to adopt such an expansive interpretation of the state
statute. Defendants' Motion for Summary Judgment is **ALLOWED** with
respect to Count 7.

### IV. ORDER

Defendants' Motion for Summary Judgment (Docket No. 27) is
**ALLOWED** with respect to Counts 1, 2, and 3 (Equal Protection) and
Count 7 (Massachusetts Fair Educational Practices Act).

                                   /s/ PATTI B. SARIS
                                  PATTI B. SARIS
                                  United States District Judge